**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------×

TREAD MAINES and BERNETTE BAILEY-MARSH,

*Plaintiffs,*

**17 CV 5453**

*v.*

**AMENDED COMPLAINT**

LAST CHANCE FUNDING INC., *d/b/a* THE LCF GROUP, and ANDREW PARKER.

*Defendants.*

---------------------------------------------------------------------×

Plaintiff Tread Maines and Bernette Bailey-Marsh, by their counsel, The Harman Firm, LLP and Young & Ma LLP, allege for their Amended Complaint against Defendant Last Chance Funding Inc., d/b/a The LCF Group and Andrew Parker, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs Tread Maines ("Tread") and Bernette Bailey-Marsh ("Bernette") seeks damages and costs against Defendants Last Chance Funding Inc., d/b/a The LCF Group (LCF) and Andrew Parker ("Parker"), for discriminating against them based on race and age in violation of Title VII of the Civil Rights Act of 1964 (“Title VII”), 42 U.S.C. §§ 2000e *et seq*., and the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law §§ 290 *et seq*.

2. Plaintiffs also seeks damages and costs against Defendants for discriminating against them and terminating them based on race in violation of § 1981 of the Civil Rights Act of 1866 (“Section 1981”), 42 U.S.C. § 1981.

3. Plaintiff Tread also seeks damages and costs against Defendants for retaliating against him for his complaints about race discrimination, in violation of Title VII of the Civil Rights Act of 1964 (“Title VII”), 42 U.S.C. §§ 2000e *et seq*., and the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law §§ 290 *et seq*.

4. Plaintiff Tread also seeks damages and costs against Defendants for retaliating against him for his complaints about age discrimination, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq*., and the NYSHRL.

**JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

5. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiffs' claims arising under Title VII and the ADEA.

6. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiffs' NYSHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

8. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC) by both Plaintiffs. The EEOC issued a Right-to-Sue letter dated June 29, 2017 for Plaintiff Tread and August 21, 2017 for Plaintiff Bernette, relating to the discriminatory and retaliatory acts described in this Complaint. This action was properly instituted for each Plaintiff within 90 days of the issuance of the Right-to-Sue letters.

**TRIAL BY JURY**

9. Plaintiffs respectfully requests a trial before a jury.

## PARTIES

10. Plaintiff Tread, at all times relevant hereto, was and is a resident of Cobb County in the State of Georgia.

11. Plaintiff Bernette, at all times relevant hereto, was and is a resident of Suffolk County in the State of New York.

12. Upon information and belief, at all times relevant hereto, LCF was and is a corporation organized under the laws of the State of New York with its principal place of business located at 411 Hempstead Turnpike, Suite 101, West Hempstead, New York 11552 in Nassau County.

13. LCF is a merchant cash advance company, a type of small business financing firm whose loan options are characterized by short payment terms and small regular payments, which specializes in funding high-risk and hard-to-fund businesses.

14. Upon information and belief, Andrew Parker resides in the State of New York and is the owner of LCF at 411 Hempstead Turnpike, Suite 101, West Hempstead, New York 11552 in Nassau County.

## STATEMENT OF FACTS

**Plaintiff Tread Maines**

15. Tread is a 53-year-old African-American man.

16. Tread has several decades of experience in collections, risk management, and the merchant cash advance industry.

17. On or about February 1, 2017, LCF hired Tread, who resides in Georgia, to work remotely as its Director of Risk and Collections.

18. Throughout his employment at LCF, Tread was subjected to discrimination based on his age and race.

19. Tread was one of only two African-American employees over the age of 40 during his employment at LCF—the other of whom (Bernette Bailey-Marsh, LCF's former Controller) was terminated during Tread's employment and replaced by Lauren Immoor, a younger white employee.

20. Andrew Parker (CEO), Lauren Immoor (Accountant, promoted to Controller after Plaintiff Bernette's termination), and Kristen Van Wie (Director of Operations) treated Tread less well than white and younger employees.

21. For example, Parker made derogatory comments about Tread's age, such as calling him "old and dumb."

22. Ms. Van Wie reprimanded Tread for fabricated performance "deficiencies," such as failing to make over 100 calls in a single day, even though Tread had never been informed of any such expectation and, as Ms. Van Wie did not supervise Tread, she had no authority to reprimand him.

23. Lauren Immoor ("Lauren") baselessly denied Tread access to information he needed to complete his job responsibilities, impairing his ability to perform his job responsibilities.

24. Prior to the hiring of Tread, LCF employed and/or contracted a Canadian White male Mitchell (Mitch) Levy in Tread's role and Mr. Levy was paid twice Tread's salary.

25. In and around late March 2017, Tread learned that his sister-in-law had died, and he emailed Parker to inform him that there had been a death in his family and to inquire about LCF's bereavement leave policy.

26. Shortly after Tread submitted this request, on or about March 30, 2017, Ms. Van Wie sent Tread an email, informing him that LCF was demoting him from Director of Collections and replacing him with Lauren, on the grounds that LCF was "not happy with the current state of affairs."

27. Tread then complained via email to Parker, Ms. Van Wie, and Lauren that LCF had harassed him and created a hostile work environment based on his age and race.

28. Parker refused to address Tread's complaints and insisted, "No one has harassed you," stating that LCF had not subjected Tread to "anything even remotely close to a hostile environment or any sort of harassment."

29. Parker then claimed that Tread's complaints of discrimination somehow constituted Tread's resignation, stating, "It is obvious by this email that you no longer wish to work for LCF and are resigning."

30. When Tread clarified that he was not resigning, but wanted to address the issues of discrimination that he had raised, Parker terminated Tread's employment explicitly because of his complaints, stating, "Regardless, if you are not resigning then you are fired. I cannot have an employee working here who feels the way you do as evident in your below emails, baseless claims made with no merit."

31. Similarly, another African American female employee Rebecca Alexandre ("Rebecca") was an administrative assistant who had been sexually harassed by an older White male employee. As there is no formalized HR function at LCF, Rebecca reported the harassment to Lauren. Parker's response was "Why didn't she report it the first time?" This older White male employee is known to have harassed many women in the workplace. With respect to Rebecca, he had physically assaulted her twice in the office. Parker offered to speak with this

employee but made the hostile work environment worse as the perpetrator tried to apologize and continued to approach her. Parker did not separate the two employees, did not conduct any sexual harassment or anti-discrimination training and took no adverse actions against the White male perpetrator. Therefore, it is completely evident that LCF has no formal HR procedures to prevent discrimination, harassment and retaliation which is clearly rampant in the company.

32. In fact Parker participated in discriminatory remarks against African American employees. He participated with a sales employee about the smell of Rebecca's food. A group of White employees had left a rude post-it about the smell of Rebecca's fish she bought from home which is a traditional Haitian dish. When the sales employee came to see Parker, he said "What is that stench you had texted me about?" making clear that they are engaging in group harassment of African American employees and their culture and life and food choices. This is after Parker did absolutely nothing about the sexual harassment of this same African American female employee perpetrated by an older White man.

33. In front of Rebecca again, Parker said to another White employee "Can you believe that banks are closed on Martin Luther King Day?"

34. Ultimately, LCF terminated Tread's employment in retaliation for his complaints about race and age discrimination, in violation of Title VII, the ADEA, and the NYSHRL.

**Plaintiff Bernette Bailey-Marsh**

35. Plaintiff Bernette was employed with LCF from September 27, 2016 through February 24, 2017.

36. Prior to joining LCF, Plaintiff Bernette had 20 years of experience in her own accounting practice with competency in preparing, examining, and analyzing accounting records, financial statements and financial reports; compiling financial statements and budgets;

daily/monthly/annual accounting activities, preparing and filing individual, payroll, state, sales, partnership and corporate tax returns, and supervising employees. Plaintiff Bernette had represented accounting operations for organizations with over $2 million in revenue and up, saving her clients substantial amounts in sales tax audits, worked with 501(c)(3) organizations, handled corporate conversions and restructuring and is widely published including in Newsday.

37. Bernette has a bachelors of science in accounting from Long Island University.

38. Bernette is proficient in Quickbooks, Sage/Peachtree, Microsoft Dynamics, Turbo Tax and ATX.

39. Bernette is a 53-year-old African-American woman.

40. At LCF, Bernette accomplished an IRS write off of $8000 in payroll tax liability, internalized company payroll through ADP, prepared Form 1099s, worked on old collection files, streamlined payment history on merchant accounts (payment history updated immediately once payments posted), and met with the CPA to start internalizing the organization's cash disbursements, cash receipts and bank reconciliations into their existing accounting system.

41. Bernette reported to Andrew Parker who is the owner of LCF. In reality, Bernette started to report to a 28 year old White female named Lauren Immoor who was originally assigned to be her subordinate and has no accounting background or experience.

42. Bernette was hired at a $70,000 annual salary and promised to be raised to $75,000 in 90 days of employment and $80,000 within 180 days of employment.

43. During the first 90 days, LCF asked Bernette to work on collection files and they had not yet hired Tread Maines.

44. After 90 days of positive work performance, Bernette asked for her 90 day review to receive the promised raise and Defendant Parker said "you are lucky to have a job" instead of making good on his promise.

45. Bernette had met with the company CPA Yoel Wagschal who felt that Bernette was competent to handle the accounting department and that Parker would not need to hire another Chief Financial Officer. Both Bernette and the company CPA knew how to use Sage/Peachtree and had other accounting specific knowledge as they are both accomplished in the industry.

46. As Defendant Parker originally assigned Lauren to report to Bernette, Bernette requested that Lauren fill out timesheets to properly track her time. Bernette noticed that Lauren was missing important payments on merchant accounts and had very suspect overtime hours claiming to be working on "Salesforce" at home in evenings and weekends and also monopolized merchant accounts without progress. Lauren never complied with this request or showed Bernette her timesheets.

47. Bernette was the most senior African American female employee in the company and noticed that other African American employees were in more junior, administrative roles whereas younger White employees were give much more authority.

48. Lauren refused to cooperate with and report to Bernette from the start. Bernette reported to Parker that Lauren refuses to listen even as Bernette is the head of the department. Although Parker promised to speak to Lauren, Bernette believes he did not do so.

49. When Rishalla Ganpat ("Rishalla") was hired to be a bookkeeper to support Bernette and the accounting department, she was only allowed to train Bernette for a few days

before Lauren became angry and wanted to train Rishalla. Subsequently, Rishalla was made to work on Salesforce and basic data entry only for Lauren which is not the job she accepted.

50. Subsequent to Bernette's termination, Parker and Lauren told Rishalla that they will no longer hire Black employees due to Plaintiff Tread's complaint of discrimination. In fact when looking for collections and accounting prospective employees, Lauren would ask Rishalla "Does this person sound Black?" Additionally Parker and Lauren discussed openly that they will not advertise on Indeed and/or Craigslist in West Hempstead anymore because there are too many African American candidates there and would instead advertise in a more "White" town. Bernette found the job through a Craigslist posting in West Hempstead although she lives in Suffolk County.

51. Eventually, Parker utilized another young White female employee Kristin Van Wie (age 24) and Lauren to pick on Bernette's timesheet to terminate her. The same pre-textual excuses were used on Rishalla who resigned over the abuse as another African American woman. Rebecca, the African American woman who experienced sexual harassment by an older White male employee and reported the incidents to be ignored by White management and who experienced other racial animus in a hostile work environment, also had difficulty in receiving compensation for time worked. As the clock systems are faulty at LCF, it did not always track employee time when clocking in and out. Rebecca was forced to provide phone back up of work performed to receive $40 of missing pay and other White employees did not experience any similar abuse.

52. Bernette became sick on February 14th and February 15th due to the stress and was terminated on February 24, 2017 with pre-textual excuses on her timesheet although she was a non-exempt senior employee who typically should have more authority over her own time and

who had accomplished many advanced accounting/finance functions for the company. This too is evidence of the undermining of a senior African American female employee with extensive experience in accounting.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Race And Age Discrimination in Violation of Title VII**
**(All Plaintiffs against All Defendants)**

53. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 50 with the same force as though separately alleged herein.

54. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of the above-named Defendants.

55. Defendants were and are employers within the meaning of Title VII.

56. At all times relevant to this case, Plaintiffs were and are African American employees over the age of 40 and are members of protected classes within the meaning of Title VII.

57. At all times, Defendants were aware of Plaintiffs' race and age.

58. Defendants engaged in unlawful employment practices prohibited by Title VII because of Plaintiffs' race and age in the manner described in the Statement of Facts.

59. Ultimately Defendants terminated Plaintiffs due to their race and/or age.

60. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and will continue to suffer the loss of income, loss of salary, and continued advancement in their career. Plaintiffs will also have suffered future pecuniary losses, attorneys fees and costs, emotional pain and suffering, inconvenience and other non-pecuniary losses.

61. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and will continue to suffer, among other items, impairment and damage to Plaintiffs' good name and reputation, emotional distress, mental anguish and lasting embarrassment and humiliation.

62. Plaintiffs are entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Defendants under Title VII.

**SECOND CAUSE OF ACTION**
**Race And Age Discrimination in Violation of NYSHRL**
**(All Plaintiffs against All Defendants)**

63. Plaintiffs hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 60 with the same force as though separately alleged herein.

64. This claim is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

65. At all relevant times, Defendants were and are employers within the meaning of the NYSHRL.

66. At all relevant times, Plaintiffs were and are employees within the meaning of the NYSHRL.

67. At all times relevant to this case, Plaintiffs were and are African-American employees over the age of 40 and are members of protected classes within the meaning of NYSHRL.

68. At all times, Defendants were aware of Plaintiffs' race and age.

69. Defendant engaged in unlawful employment practices prohibited by NYSHRL because of Plaintiffs' race and age in the manner described in the Statement of Facts.

70. Ultimately Defendants terminated Plaintiffs due to their race and/or his age.

71. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, national origin, and age, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

72. Defendants are also individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

73. Plaintiffs hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

74. Plaintiffs' damages include financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

75. Plaintiffs are entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants' under the NYSHRL.

**THIRD CAUSE OF ACTION**
**Hostile Work Environment and Wrongful Termination in Violation of Section 1981**
**(All Plaintiffs against All Defendants)**

76. Plaintiffs hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

77. Section 1981 prohibits employers from discriminating against employees on the basis of race.

78. Defendants discriminated against Plaintiffs by subjecting them to hostile, discriminatory treatment and offensive, racially motivated comments. Defendants discriminated against Plaintiffs by promoting White and/or younger lesser qualified employees over Plaintiffs and subsequently terminating Plaintiffs with no legitimate reason.

79. Defendants unlawfully terminated Plaintiffs because of their race.

80. As a direct and proximate consequence of Defendants' race discrimination, Plaintiffs have suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

81. Defendants' discriminatory treatment of Plaintiffs were willful and in reckless disregard of Plaintiffs' federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of Title VII**
**(Plaintiff Tread Maines against LCF and Andrew Parker)**

82. Plaintiff Tread hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

83. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

84. Plaintiff Tread engaged in protected activity under Title VII when he properly complained to Defendants about race discrimination unlawful under Title VII.

85. Defendants retaliated against Plaintiff Tread by terminating his employment.

86. As a direct and proximate consequence of Defendants' retaliation, Plaintiff Tread has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of the ADEA**
**(Plaintiff Tread Maines against LCF and Andrew Parker)**

87. Plaintiff Tread hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 84 with the same force as though separately alleged herein.

88. The ADEA prohibits an employer from retaliating against an employee for engaging in protected activity under the ADEA.

89. Plaintiff Tread engaged in protected activity under the ADEA when he properly complained to Defendants about age discrimination unlawful under the ADEA.

90. Defendants retaliated against Plaintiff Tread by terminating his employment.

91. As such, Defendants have violated the ADEA.

92. As a direct and proximate consequence of Defendants' retaliation, Plaintiff Tread has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Retaliation in Violation of the NYSHRL**
**(Plaintiff Tread Maines against LCF and Andrew Parker)**

93. Plaintiff Tread hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

94. The NYSHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYSHRL.

95. Plaintiff Tread engaged in protected activity under the NYSHRL when he properly complained to Defendants about race and age discrimination unlawful under the NYSHRL.

96. Defendants retaliated against Plaintiff Tread by terminating his employment.

97. As such, Defendants have violated the NYSHRL.

98. As a direct and proximate consequence of Defendants' retaliation, Plaintiff Tread has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial,

E. For the fifth cause of action, damages to be determined at trial,

F. For the sixth cause of action, damages to be determined at trial, and

G. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 17, 2017

By: s/ Walker G. Harman, Jr.

Walker G. Harman, Jr.
Owen H. Laird
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

Tiffany Ma
Young & Ma LLP
575 Lexington Avenue, 4th Floor
New York, NY 10022
(212) 971-9773
tma@youngandma.com

*Attorneys for Plaintiffs Tread Maines and Bernette Bailey-Marsh*