**FILED**
**CLERK**

2:25 pm, Sep 21, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
TREAD MAINES and BERNETTE BAILEY-
MARSH,

                       Plaintiffs,

            -against-

LAST CHANCE FUNDING, INC. D/B/A THE
LCF GROUP and ANDREW PARKER,

                   Defendants.

---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-05453 (ADS)(ARL)

## APPEARANCES:

**The Harman Firm, LLP**
*Counsel for the Plaintiffs*
220 Fifth Avenue, Suite 900
New York, NY 10001
        By:    Edgar Mikel Rivera. Esq.
                Owen Huntting Laird, Esq.
                Walker G. Harman, Jr., Esq., Of Counsel.

**Young & Ma LLP**
*Counsel for the Plaintiffs*
575 Lexington Avenue
New York, NY 10022
        By:    Tiffany Ma, Esq., Of Counsel.

**Milman Labuda Law Group PLLC**
*Counsel for the Defendants*
3000 Marcus Avenue
Lake Success, NY 11042
        By:    Brett Walker Joseph, Esq.
                Jamie Scott Felsen, Esq., Of Counsel.

**SPATT, District Judge**:

       Presently before the Court is a motion to dismiss, pursuant to Federal Rule of Civil

Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), by defendants Last Chance Funding Inc., d/b/a

The LCF Group ("LCF") and Andrew Parker ("Parker") (collectively, the "Defendants"), as well as a cross-motion to amend the complaint, pursuant to Rule 15(a)(2), by plaintiffs Tread Maines ("Maines") and Bernette Bailey-Marsh ("Bailey-Marsh") (and collectively with added proposed plaintiffs Rishalla Ganpat ("Ganpat") and Rebecca Alexandre ("Alexandre"), the "Plaintiffs"). *See* ECF 32-2 (the "PSAC").

The Defendants limited their opposition to the cross-motion to amend to the argument that the proposed changes would be futile. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (Spatt, J.) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

The Defendants had adequate notice and time to respond to the PSAC, and thus the Court will consider the motion to dismiss in light of the new allegations in the PSAC. *See Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 226 (E.D.N.Y. 2015) (Spatt, J.) ("Here, as the Defendants had sufficient opportunity to respond to the proposed amended complaint, the merits of the Defendants' motions to dismiss will be considered in light of the amended complaint."); *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F.Supp.3d 331, 338 (E.D.N.Y. 2014) (Spatt, J.) ("Where, as here, the Plaintiff seek[s] to amend his complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion to dismiss as moot to considering the merits of the motion in light of the amended complaint.").

Therefore, the outcome of the Plaintiffs' motion to amend turns on the PSAC's ability to survive the Defendants' motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (noting that "[a]n amendment to a pleading will be futile

if a proposed claim could not withstand a motion pursuant to Rule 12(b)(6)"); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 399 (E.D.N.Y. 2015) (Spatt, J.) ("If the PSAC cannot survive the motion to dismiss, then the Plaintiff's cross-motion to amend will be denied as futile.").

For the following reasons, the Court grants the motion to dismiss, in part, and denies the motion to dismiss, in part. Accordingly, the Court grants the motion to amend, in part, and denies the motion to amend, in part.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the PSAC, and construed in a light most favorable to the Plaintiffs.

### A. THE FACTUAL BACKGROUND

LCF is a corporation organized under the laws of the State of New York with its principal place of business located in Nassau County. PSAC ¶ 21. Parker is LCF's CEO and resides in Nassau County. *Id.* ¶¶ 26, 38. LCF is a merchant cash advance company—a type of small business financing firm whose loan options are characterized by short payment terms and small regular payments—which specializes in funding high-risk and hard-to-fund businesses. *Id.* ¶ 22. The Plaintiffs are all former employees of LCF. *Id.* ¶¶ 33, 52, 76, 106.

#### 1. Maines

Maines is a 53-year-old African-American man with several decades of experience in collections, risk management, and the merchant cash advance industry. *Id.* ¶¶ 31–32. Maines, who resides in Georgia, worked remotely as LCF's Director of Risk and Collections from February 1, 2017 to March 30, 2017. *Id.* ¶ 33. According to Maines, LCF hired him to replace a younger, white male who was paid twice his salary because it believed that, as an African-American, Maines would be "cheaper." *Id.* ¶¶ 35–36. While at LCF, Maines was one of only two African-American

employees over the age of 40. The other employee was Bailey-Marsh, who was terminated and replaced by a younger white employee. *Id.* ¶ 37.

Maines claims he was subjected to discrimination based on his age and race throughout his tenure at LCF. For example, Maines alleges that Parker made derogatory comments about Maines's age, such as calling him "old and dumb." *Id.* ¶ 39. Maines further claims that other supervisors fabricated performance deficiencies; reprimanded him; and denied him access to information needed to complete his job responsibilities, but did not treat their younger, white co-workers in this manner. *Id.* ¶¶ 40–42.

According to the PSAC, on or about March 30, 2017, the Director of Operations at LCF, Kirsten Van Wie ("Van Wie"), sent Maines an e-mail demoting him purportedly on the grounds that LCF was "not happy with the current state of affairs." *Id.* ¶ 45. The email informed him that he would be replaced by Lauren Immoor ("Immoor"), a younger white employee. *Id.*

The PSAC alleges that Maines responded by "complain[ing] via email to Mr. Parker, Ms. Van Wie, and Ms. Immoor that LCF had harassed him and created a hostile work environment based on his age and race." *Id.* ¶ 47. According to Maines, Parker refused to address Maines's complaints; insisted that no harassment occurred; and construed the complaints as Maines's resignation. *Id.* at ¶¶ 48–49. Further, the PSAC alleges that Parker terminated Maines when he clarified that he was not resigning but wanted to address the issues of discrimination that he raised. *Id.* ¶ 50.

### 2. Alexandre

Alexandre is an African-American woman who was employed by LCF as an administrative assistant. *Id.* ¶ 52. On at least two occasions, a white male LCF employee, "Joe," came into

Alexandre's office when no one else was around and rubbed her back and shoulders without her consent. *Id.* ¶¶ 53–54. Alexandre found this conduct unwanted and offensive. *Id.* ¶¶ 56–57.

LCF lacked a formalized human resources function, so that Alexandre reported Joe's conduct to Immoor after the second episode. *Id.* ¶ 57. Parker, who ultimately handled the complaint, responded to Alexandre's report by asking "Why didn't she report it the first time?" *Id.* ¶ 58. Parker offered to speak with Joe, after which Joe tried to apologize and continued to approach Alexandre. *Id.* ¶ 62. Parker did not separate the two employees; did not conduct any sexual harassment or anti-discrimination training; and otherwise failed to discipline Joe. *Id.* ¶ 63.

According to Alexandre, LCF failed to discipline Joe for other inappropriate office behavior. *Id.* ¶ 61. For example, the PSAC alleges that Joe was "known to have harassed many women in the workplace." *Id.* ¶ 59. Joe also openly viewed pornography in the workplace, and was caught doing so by Van Wie. *Id.* ¶ 60.

As a result of the unwanted sexual contact and Joe's other office behavior, Alexandre claims that she "felt constantly wary because of her gender, and consistently needed to avoid Joe, who remained in the same area." *Id.* ¶ 64.

The PSAC also alleges that Alexandre faced racial discrimination at LCF. As an example, Alexandre cites comments Parker and an LCF sales employee made about the smell of the Haitian food that Alexandre brought to the office for lunch. *Id.* ¶¶ 67–68. Alexandre also overheard Parker make derisive comments to another white employee about the Martin Luther King Jr. holiday. *Id.* ¶¶ 69–70. In addition, Alexandre claims "LCF's white employees regularly leveled stereotypical accusations at the African-American employees, such as suggesting that they used marijuana." *Id.* ¶ 71. According to the PSAC, Alexandre also had to provide phone backup of work performed to

receive compensation for untracked time, even though no white employees experienced similar issues. *Id.* ¶¶ 72–75.

### 3. Bailey-Marsh

Bailey-Marsh is a 53-year-old African American woman with a bachelor of science degree in accounting from Long Island University. *Id.* ¶¶ 79, 81. She was an accountant at LCF, with 20 years of prior experience. *Id.* ¶ 77. She possessed competency in many of the core aspects of accounting, and was proficient in the pertinent accounting software. *Id.* ¶¶ 77, 80. Prior to joining LCF, Bailey-Marsh had experience in handling accounting operations for large organizations. *Id.* ¶ 78. Bailey-Marsh was also a widely published columnist. *Id.*

According to the PSAC, LCF hired Bailey-Marsh at a $70,000 annual salary, which LCF promised would be raised to $75,000 within 90 days of employment and $80,000 within 180 days of employment. *Id.* ¶ 85. After 90 days, Bailey-Marsh asked for her 90 day review to receive the promised raise. *Id* ¶ 87. In response, instead of making good on his promise, Parker said: "You are lucky to have a job." *Id.* ¶ 88.

Bailey-Marsh alleges that LCF undermined her in favor of younger, white employees. *Id.* ¶¶ 103–105. LCF originally assigned Bailey-Marsh to report to Parker. *Id.* ¶ 83. The PSAC alleges, however, that in practice, Bailey-Marsh reported to Immoor, a 28-year-old white woman with no accounting background or experience who was supposed to be Bailey-Marsh's subordinate. *Id.* ¶ 84. Further, Bailey-Marsh alleges that Immoor, though junior to and less qualified than her, refused to cooperate with and report to her. *Id.* ¶¶ 96–97. For example, Immoor refused Bailey-Marsh's request that Immoor fill out timesheets to properly track time. *Id.* ¶¶ 91–93. Although Parker promised to speak to Immoor, he did not do so, and Immoor's conduct did not change. *Id.*

¶ 98. In addition, Bailey-Marsh claims that white employees at LCF began to criticize her as "slow." *Id.* ¶ 99.

According to the PSAC, LCF also had a practice of hiring and promoting white employees over African-American employees. *Id.* ¶ 95. In support of this allegation, Bailey-Marsh claims that LCF placed African-American employees in more junior, administrative roles, whereas younger white employees were given more authority, even when less qualified. *Id.* ¶ 94.

On or about February 24, 2017, the Defendants terminated Bailey-Marsh based on "pre-textual excuses about her timesheet," and distributed her job responsibilities to younger, white employees. *Id.* ¶¶ 102–103. Bailey-Marsh claims that Parker "utilized another young white female employee, Ms. Van Wie (age 24), and Ms. Immoor to baselessly scrutinize on Ms. Bailey-Marsh's timesheet to terminate her." *Id.* ¶ 100.

### 4. Ganpat

Ganpat is an African-American woman who LCF hired as a bookkeeper to support Bailey-Marsh and the accounting department. *Id.* ¶ 106. Immoor, however, required Ganpat to train with her instead after only a few days of training with Bailey-Marsh. *Id.* ¶ 107. Subsequently, LCF made Ganpat work on Salesforce and basic data entry for Immoor, which allegedly was not the job accepted by Ganpat. *Id.* ¶ 108.

According to the PSAC, Ganpat heard the Defendants express discriminatory remarks on a number of occasions. Subsequent to Bailey-Marsh's termination, Parker and Immoor told Ganpat that LCF would no longer hire black employees due to Maines's complaint of discrimination. *Id.* ¶ 111. When looking for prospective employees, Immoor asked Ganpat whether candidates sounded black, *id.* ¶ 112, and the Defendants allegedly ran internet searches and background searches on candidates to determine their race. *Id.* ¶ 113. Parker and Immoor discussed openly that

they would not advertise on hiring websites in West Hempstead anymore because "there are too many African-American candidates there" and that they would instead advertise in a more "White" town. *Id.* ¶ 115. Further, Ganpat witnessed the Defendants specifically reject candidates because of their race. *Id.* ¶ 114.

Ganpat further alleges that she was forced to resign because of LCF's "abuse." *Id.* ¶ 120. Specifically, she claims that she was subject to written discipline due to "pre-textual excuses" and "specious criticism," which white employees were not subjected to. *Id.* ¶ 117. As an example, she alleges that LCF requires African-American employees to document absences with a doctor's note, while white employees were not so required. *Id.* ¶ 118.

## B. THE PROCEDURAL BACKGROUND

On September 18, 2017, Maines commenced this employment discrimination action against the Defendants alleging retaliation and age and race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.* ECF 1.

On November 17, 2017, Maines amended the complaint, adding Parker as a Defendant, joining Bailey-Marsh as a plaintiff, and inserting claims under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981. ECF 8.

On January 29, 2018, the Defendants moved to dismiss the Complaint for failure to state a claim upon which relief may be granted. ECF 19.

On March 30, Maines and Bailey-Marsh sought leave from the Court to file the PSAC under Rule 15(a)(2), which provides additional factual information to the pre-existing allegations and joins Ganpat and Alexandre as Plaintiffs. ECF 30, 32-2. In the PSAC, Maines and Bailey-

Marsh also withdrew their claims for individual liability under Title VII and the ADEA against Parker, as well as their age discrimination claim under Title VII. ECF 35 at 14.

The causes of action and the relevant parties asserted in the PSAC are as follows:

- Count I – Hostile Work Hostile Work Environment Based on Race in Violation of Title VII (Plaintiffs Maines and Bailey-Marsh; Against Defendant LCF)

- Count II – Wrongful Termination Based on Race in Violation of Title VII (Plaintiffs Maines and Bailey-Marsh; Against Defendant LCF)

- Count III - Retaliation in Violation of Title VII (Plaintiff Maines; Against Defendant LCF)

- Count IV – Hostile Work Environment Based on Race in Violation of § 1981 (All Plaintiffs; Against All Defendants)

- Count V – Wrongful Termination Based on Race in Violation of § 1981 (Plaintiffs Maines, Bailey-Marsh, and Ganpat; Against All Defendants)

- Count VI – Retaliation in Violation of § 1981 (Plaintiff Maines; Against All Defendants)

- Count VII – Hostile Work Environment Based on Age in Violation of the ADEA (Plaintiffs Maines and Bailey-Marsh; Against Defendant LCF)

- Count VIII – Wrongful Termination Based on Age in Violation of the ADEA (Plaintiffs Maines and Bailey-Marsh; Against Defendant LCF)

- Count IX – Retaliation in Violation of the ADEA (Plaintiff Maines; Against Defendant LCF)

- Count X – Hostile Work Environment in Violation of the NYSHRL (Plaintiffs Bailey-Marsh, Alexandre and Ganpat; Against All Defendants)

- Count XI – Wrongful Termination Based in Violation of the NYSHRL (Plaintiffs Maines, Bailey-Marsh, and Ganpat Against All Defendants)

- Count XII – Retaliation in Violation of the NYSHRL (Plaintiff Maines Against All Defendants)

- Count XIII – Hostile Work Environment and Sexual Harassment Based on Gender in Violation of the NYSHRL (Plaintiff Alexandre Against All Defendants)

PSAC ¶¶ 121–204.

## II. DISCUSSION

### A. THE STANDARD FOR DISMISSAL UNDER RULE 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F.Supp.2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has expounded that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F.Supp.3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

**B. AS TO THE JUDICIAL ESTOPPEL OF CAUSES OF ACTION ASSERTED BY MAINES**

The Defendants claim that the Court should dismiss the claims brought by Maines, under the doctrine of judicial estoppel, due to his failure to list them as an asset in a Chapter 13 Bankruptcy proceeding in the Bankruptcy Court for the Northern District of Georgia. *In re Maines*, No. 14-68690 (Bankr. N.D. Ga.) ("Bankruptcy Docket"). Although it finds this to be a close question, the Court denies the Defendants' request to dismiss on this ground, because Maines amended his schedule of assets in the bankruptcy proceedings to include the claims presented before this Court.

"Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000) (citing *Bates v. Long Island R.R.*, 997 F.2d 1028, 1037–38 (2d Cir. 1993)). "Courts that choose to apply the doctrine of judicial estoppel do so only with caution." *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288, 311 (E.D.N.Y. 2015) (Spatt, J.).

The circumstances under which judicial estoppel may be invoked are "probably not reducible to any general formulation of principle," and as such, the applicability of the doctrine is not bound by "inflexible prerequisites or an exhaustive formula." *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Nevertheless, a number of factors typically guide the Court's inquiry. At a minimum, a party must demonstrate that: "(1) his adversary 'advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.'" *Wight*, 219 F.3d 79 at 90 (quoting *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996)). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51. The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).

Before the Court proceeds to the merits of the Defendants' argument, the Court will set forth the relevant dates in the bankruptcy proceedings. Maines filed for Chapter 13 Bankruptcy on September 14, 2014, before he began his employment at LCF. Bankruptcy Docket, ECF 1. The Bankruptcy Court confirmed Maines's Chapter 13 Plan on December 18, 2014, and modified the

Plan on April 14, 2016. Bankruptcy Docket, ECF 23, 38. The Defendants do not fault Maines for failing to list the present action for the purposes of these orders. Indeed, they could not; Maines did not start at LCF until February 1, 2017, and was terminated on March 30, 2017. Rather, the Defendants point to the omission of Maines's discrimination and retaliation causes of action in an April 26, 2017 motion to modify his confirmed plan, which the Bankruptcy Court adopted on June 1, 2017. Bankruptcy Docket, ECF 51, 54.

Looking at these facts alone, the Court agrees that the Defendants have established the first two factors of the judicial estoppel inquiry. "[M]any courts in this circuit have applied judicial estoppel in the bankruptcy context to dismiss undisclosed claims." *Romeo v. FMA All., Ltd.*, No. 15-cv-6524, 2016 WL 3647868, at *13 (E.D.N.Y. June 30, 2016) (Spatt, J.) (citing *Ibok v. Siac-Sector Inc.*, No. 05-cv-6584, 2011 WL 293757, at *5–9 (S.D.N.Y. Jan. 31, 2011) (collecting cases), *report and recommendation adopted*, 2011 WL 979307 (S.D.N.Y. Mar. 14, 2011)). Further, "'[a]doption' in judicial estoppel 'is usually fulfilled . . . when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor.'" *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 194 (2d Cir. 2017) (quoting *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 118 (2d Cir. 2014)). Here, Maines omitted his claims in this case from his April 26, 2017 motion to modify his confirmed plan, and the Bankruptcy Court adopted his inconsistent factual position by confirming the modified plan on June 1, 2017.

These facts alone, however, do not warrant judicial estoppel, because Maines filed an amended schedule in his bankruptcy case identifying this action as a potential asset. Bankruptcy Docket, ECF 80. As a result, the Court does not find that this is a case where Maines will "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New*

*Hampshire*, 532 U.S. at 755[1]. While the Second Circuit has "been particularly apt to overlook the general requirement that a party seeking estoppel have suffered prejudice where, as here, the party to be estopped failed to make the proper disclosures during bankruptcy," it has also "previously noted, however, this rationale cannot extend to the 'unusual case' in which a debtor's nondisclosure had at most a '*de minimis* effect' on a prior bankruptcy proceeding." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 267 (2d Cir. 2018) (quoting *Adelphia*, 748 F.3d at 120).

Maines's bankruptcy petition remains open, and his plan is still subject to amendment as a matter of course. 11 U.S.C. § 1329(a); Fed. R. Bankr.P. 1009(a). As a result, the impact of his failure to disclose the present cause of action on his creditors, if any, is minimal. *See Murray v. Bd. of Educ. of City of New York*, 248 B.R. 484, 487–88 (S.D.N.Y. 2000) ("Because plaintiff's failure to list this cause of action as an asset in her bankruptcy—whether intentional or unintentional—has been cured by recent developments in her bankruptcy case, no harm will come to her creditors by permitting this suit to proceed."). Therefore, the Court finds this case distinguishable from the cases relied upon by the Defendant, which applied judicial estoppel to claims omitted from closed bankruptcy proceedings that culminated in the discharge of the petitioner's debt.

The Court duly notes the authority cited by the Defendants which, focusing on the judicial integrity of the bankruptcy proceedings, found subsequent amendments to the bankruptcy petition insufficient to escape dismissal. *See Amash v. Home Depot U.S.A., Inc.*, 503 B.R. 232, 236–38 (N.D.N.Y. 2013); *Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP*, No. 13-cv-2747, 2014 WL 4061157, at *6 (S.D.N.Y. July 11, 2014), *report and recommendation adopted*, 2014 WL 3974584 (S.D.N.Y. Aug. 13, 2014). However, these cases fall within a line of authority applying "judicial estoppel upon any intentional failure to disclose, even when the party invoking

14

judicial estoppel was not a party to the bankruptcy case and therefore not adversely affected by the non-disclosure." *In re Frontier Ins. Grp., Inc.*, 585 B.R. 685, 704 (Bankr. S.D.N.Y. 2018) (collecting cases). The Court respectfully disagrees with these cases. It is important to "take a more nuanced view of the analysis in the bankruptcy context . . . and consider all the circumstances of the case in order to reduce the risk that the party invoking the doctrine will receive an unjustified windfall." *Id.*

Further, the Defendants argue the Court should infer that Maines omitted his claims due to bad faith. *See Ibok*, 2011 WL 293757, at *8. Based on the limited amount of information provided regarding Maines's mental state during the bankruptcy proceedings, "the Court cannot rule out a good faith mistake or error." *Johns v. Local 32BJ, SEIU*, No. 11-cv-00517, 2012 WL 3779908, at *2 n.5 (E.D.N.Y. Aug. 31, 2012) (declining to apply judicial estoppel when "the circumstances surrounding Johns's failure to disclose his claim in the bankruptcy proceeding are not apparent from the record"). The fact that Maines sought to amend his plan of confirmation to include this case in the bankruptcy proceedings weighs heavily in favor of finding that he acted in good faith. *See Leahey v. SP Ctr., LLC*, 579 B.R. 13, 19 (S.D.N.Y. 2017) (rejecting judicial estoppel argument when plaintiff "twice sought to amend their bankruptcy schedule to include this action, evidencing that they had no interest in unfairly benefitting by attempting to keep this suit secret").

Therefore, the Court denies the Defendants' request to dismiss this action under the doctrine of judicial estoppel.

## C. As to Maines's Standing to Pursue Causes of Action During an Open Chapter 13 Case

The Defendant claims Maines lacks standing to bring the instant lawsuit because it is part of the bankruptcy estate. The Court disagrees. "[A] Chapter 13 debtor, unlike a Chapter 7 debtor,

has standing to litigate causes of action that are not part of a case under title 11." *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998); *see also M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 554 (E.D.N.Y. 2010) ("While Chapter 7 and Chapter 11 debtors lose standing to maintain civil suits—which must be brought and/or maintained by their bankruptcy trustees— it is clear that Chapter 13 debtors like plaintiff are *not* subject to this restriction."). The only Chapter 13 case supporting the Defendant's contention is *Amash v Home Depot U.S.A., Inc.*, 503 BR 232 (N.D.N.Y. 2013). However, the court in *Amash* did not hold that the pendency of a Chapter 13 case deprives the plaintiff of standing to bring other, unrelated lawsuits. Rather, it barred the plaintiff from asserting the claims under the doctrine of judicial estoppel. *Id.* at 237. Here, the Court rejected the Defendants' motion to dismiss under the theory of judicial estoppel, and thus denies the motion to dismiss on this ground as well.

### D. AS TO WHETHER MAINES IS AN "EMPLOYEE" UNDER THE NYSHRL

The NYSHRL has an explicit provision regarding its extraterritorial application, stating that it only applies "to an act committed outside this state against a resident of this state or against a corporation organized under the laws of this state or authorized to do business in this state." N.Y. Exec. L. § 298–a(1). Construing this provision, the New York Court of Appeals excluded from the reach of the NYSHRL non-residents "who are unable to demonstrate that the impact of the discriminatory act was felt inside the state." *Hoffman v. Parade Publications*, 15 N.Y.3d 285, 292, 907 N.Y.S.2d 145, 14 9 (2010). "The relevant 'impact' within the State that a plaintiff must plead (and later prove) is the direct effect of a discriminatory act on a protected individual—giving rise to a cause of action for that individual—not the attenuated reaction of third parties to such an individual's circumstance." *Doner-Hendrick v. New York Inst. of Tech.*, No. 11-cv-121, 2011 WL 2652460, at *8 (S.D.N.Y. July 6, 2011).

Maines is a resident of Georgia, and the PSAC lacks the necessary allegations of a direct effect in New York. Therefore, he cannot state a cause of action under the NYSHRL. Maines claims that the PSAC provides sufficient details of an impact in New York by alleging that: (1) Maines worked daily with LCF's New York employees and New York based clients; and (2) his termination "deeply impacted" his New York-based coworkers. These are the exact kinds of "tangential connections" to New York that courts have consistently rejected as a jurisdictional basis for out-of-state plaintiffs to bring claims under the NYSHRL. *See E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865–66 (S.D.N.Y. 2013) ("[P]ointing to a few occasions in which a claimant performed some work in New York and evidence that certain adverse actions were executed from New York is insufficient to show that the alleged discriminatory events had an impact in New York."); *Donner-Hendrick*, 2011 WL 2652460, at *8 (complaint alleged that termination had "a profound impact on the entire faculty, including those in New York, because they saw their administration behave in such a wanton and unlawful way' toward plaintiff"); *Ulrich v. Moody's Corp.*, No. 13-cv-0008, 2014 WL 12776746, at *16 (S.D.N.Y. Mar. 31, 2014) (complaint alleged that New-York managers were responsible for discrimination), *report and recommendation adopted as modified*, 2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014). The case cited by the Plaintiff does not support the opposite conclusion, as the court based its finding on the fact that the discrimination occurred while the plaintiff was working in New York. *See Regan v. Benchmark Co. LLC*, No. 11-cv-4511, 2012 WL 692056, at *13–14 (S.D.N.Y. Mar. 1, 2012).

Therefore, the Court grants the Defendants' motion to dismiss Maines's claims under the NYSHRL.

**E. As to Whether LCF is an "Employer" Under Title VII and ADEA**

Title VII and the ADEA both possess a requirement that claims may only be brought against an "employer" as defined by the statutes. An "employer" under Title VII has fifteen or more employees. 42 U.S.C. § 2000e(b). The ADEA sets the minimum number of employees at twenty. 29 U.S.C. § 630(b). Under both statutes, however, the threshold number of employees is an element of a plaintiff's claim for relief and not a jurisdictional issue. *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 524 (S.D.N.Y. 2017) (ADEA); *Torres v. Cortland ENT, P.C.*, No. 14-cv-1082, 2017 WL 2623893, at \*2 (N.D.N.Y. June 16, 2017) (Title VII).

As a result, plaintiffs normally survive motions to dismiss on such grounds as long as the plaintiff broadly alleges that the defendant is an employer under either statute. *See, e.g.*, *Reddington v. Staten Island Univ. Hosp.*, 373 F. Supp. 2d 177, 191–92 (E.D.N.Y. 2005) ("Here, too, plaintiff has alleged that Health System was her 'employer' as that term is defined in Title VII and the other anti-discrimination statutes she invokes. The Court finds that plaintiff's allegations are sufficient to provide Health System with notice of the claims against it."); *Mohr v. United Cement Masons' Union Local 780*, No. 15-cv-4581, 2016 WL 11263670, at \*4 (E.D.N.Y. Nov. 7, 2016) ("Although the Corrected Amended Complaint is devoid of any allegation as to the number of employees employed by the Union, this does not necessarily preclude the Court's exercise of jurisdiction over her case since her Complaint makes a good-faith allegation that defendant Union was her employer."), *report and recommendation adopted*, 2017 WL 1187690 (E.D.N.Y. Mar. 30, 2017).

However, "a Title VII defendant wishing to defeat a plaintiff's claim on the ground that it lacks fifteen employees is normally entitled to seek dismissal if the complaint shows on its face that the element of statutory coverage is lacking." *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358,

365–66 (2d Cir. 2000). Here, the PSAC alleges that "[d]uring the Plaintiffs' employment with LCF, LCF's total number of employees in the office in which Plaintiffs worked varied, ranging from as few as twelve at times to in excess of twenty at others, but generally exceeded fifteen." PSAC ¶ 23. As pointed out by the Defendants, this paragraph concedes that, at some points during the series of events underlying the PSAC, the LCF may not have been an "employer" under either statute. However, from this paragraph alone, it is not clear at which points, and how that would implicate each potential plaintiff's cause of action. At this juncture, the Court finds it would be inappropriate to rule on this issue without the benefit of discovery. *See Fernandez v. M & L Milevoi Mgmt., Inc.*, 357 F. Supp. 2d 644, 647–48 (E.D.N.Y. 2005) (denying motion to convert motion to dismiss regarding whether defendant was covered employer into summary judgment motion because "[T]he Court cannot say definitively that discovery will not bolster Plaintiff's position on this issue.").

Therefore, the Court denies the motion to dismiss on this ground.

## F. AS TO THE HOSTILE WORK ENVIRONMENT CLAIMS (COUNTS I, IV, VII, X, AND XIII)

Courts apply the same standard to hostile work environment claims under Title VII, Section 1981, the ADEA and the NYSHRL. *DeFina v. Meenan Oil Co.*, 924 F. Supp. 2d 423, 438 (E.D.N.Y. 2013) ("The standard under Title VII is applicable to hostile work environment claims under the ADEA."); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) (Spatt, J.) ("The standard for showing a hostile work environment under Title VII, Section 1981, . . . and the New York State Human Rights Law is essentially the same."); *Bermudez v. City of New York*, 783 F.Supp.2d 560, 587 (S.D.N.Y.2011) (noting that "hostile work environment claims under the NYSHRL are treated the same as such claims under federal law") (collecting cases).

In general, a hostile work environment "is established by a plaintiff showing that his or her workplace was permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Zhao v. State Univ. of N.Y.*, 472 F.Supp.2d 289, 311 (E.D.N.Y. 2007) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000)); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "To plead a hostile work environment claim, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Placide-Eugene v. Visiting Nurse Serv. of New York*, No. 12-cv-2785, 2013 WL 2383310, at *12 (E.D.N.Y. May 30, 2013) (Spatt, J.). These three elements are termed, respectively, the objective, subjective, and prohibited causal factor requirements. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

In making a determination as to the objective severity or pervasiveness of challenged conduct, courts consider "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

"However, a plaintiff need not prove all of these elements at the pleading stage." *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 30 (E.D.N.Y. 2017) (Spatt, J.). "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the

conclusion that she [or he] was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her [or his] employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

### 1. As to the "Aggregation" of Facts

As a preliminary manner, the Court notes that the Plaintiffs' papers in opposition to the motion to dismiss and in support of the motion to amend, for the most part, do not direct the Court to the specific factual allegations which would support a hostile work environment claim on an individual-by-individual basis. Ostensibly, this approach arises from the Plaintiffs' belief that the Court should view this case as a single, holistic hostile work environment claim—aggregating incidents of discrimination across different plaintiffs and across different protected characteristics. The Court rejects this approach.

First, the Plaintiffs urge the court to analyze each of their individual hostile work environment claims together, rather than analyzing whether each plaintiff adequately states a claim on their own. According to the Plaintiffs, "conduct directed at other employees is part of the totality of circumstances to be considered in evaluating a hostile work environment claim." ECF 46 at 6. The Plaintiffs further claim that all of "the alleged comments and actions are relevant to each Plaintiff's claims even if not witnessed firsthand" because "[t]he mere fact that a plaintiff is not present when a derogatory comment is made does not render the comment irrelevant to a hostile work environment claim." *Id.* While each of these statements, in isolation, is correct, "it is also the law that a plaintiff does not have a viable hostile work environment claim where that plaintiff is not the target of harassment, is not present for any harassment, and has no knowledge of the

harassment while it is ongoing." *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 515(S.D.N.Y. 2016) (citing *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001)).

Therefore, "the Plaintiffs may not 'aggregate' their allegations in order to depict an overall hostile work environment. Rather, as to each of the Plaintiffs, the complaint must set forth sufficient facts to make it plausible that they individually suffered a racially [or age-related] hostile work environment." *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (Spatt, J.). As a result, the Court will only consider alleged incidents of hostility which were not directed at a particular plaintiff or incidents occurring when a particular plaintiff was not present only to the extent that plaintiff "'shared the same 'environment—broadly conceived—as the person allegedly harassed' and that her [or his] own employment was adversely affected by the harassment." *Deras v. Metro. Transp. Auth.*, No. 11-cv-5912, 2013 WL 1193000, at *8 (E.D.N.Y. Mar. 22, 2013) (quoting *Campbell v. County of Onondaga*, 04-cv-1007, 2009 WL 3163498, at *20 (N.D.N.Y. Sept. 29, 2009)).

Second, the Plaintiffs also ask the Court to "aggregate evidence of racial hostility with evidence of hostility based on another protected characteristic." ECF 35 at 14–15. Thus far, the Second Circuit has expressly declined to address this question. *See Cruz*, 202 F.3d at 572 n.7 ("A question remains as to whether a plaintiff may aggregate evidence of racial and sexual harassment to support a hostile work environment claim where neither charge could survive on its own."). "It is, however, settled law that different forms of harassment may exacerbate each other, meaning that abuse against various different groups . . . exacerbates the effect of harassment experienced with respect to each characteristic individually." *Daniel v. T&M Prot. Res. LLC*, No. 13-cv-4384, 2018 WL 3621810, at *18 (S.D.N.Y. July 19, 2018). On the other hand, "aggregation is inappropriate where . . . the claim sought to be buttressed is patently inadequate." *Weiss v. Hustedt*

*Chevrolet*, No. 05-cv-4230, 2009 WL 2132444, at *8 (E.D.N.Y. July 13, 2009). The Court will therefore only aggregate different types of discrimination when it will "nudge, but not catapult, a claim across the line between merely offensive conduct and conduct sufficient to establish a hostile work environment." *Id.*; *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 349 (S.D.N.Y. 2017).

With these broad principles in mind, the Court will review each individual plaintiff's claims. The Court will primarily focus on the facts drawn to its attention in the papers. The Court will make reference to other, broadly referenced, allegations in the PSAC, but only to the extent that they support the conclusion that a particular plaintiff suffered a hostile work environment.

### 2. Maines

Maines fails to state a claim for hostile work environment. The only fact cited by the Plaintiffs directly supporting this cause of action is that Parker made derogatory comments about Maines's age such as calling him "old" and "dumb." PSAC ¶ 39. Plaintiffs analogize these comments to the allegations in *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171 (S.D.N.Y. 2013). However, the relevant employee in *Preuss* made age-related remarks every day for a year, threatened to fire the plaintiff one-to-three times a month, and made comments about wanting the plaintiff to die or retire. *Id.* at 186.

Here, the complained of comments, while rude, do not cross the threshold from merely offensive to harassing. *See Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 172 (E.D.N.Y. 2015) ("Title VII and the ADEA do not set forth 'a general civility code for the American workplace.'"). Further, the PSAC makes no reference to the frequency of such comments. Isolated comments such as these, without more, are insufficient to support a hostile work environment claim. *See Morris v. Bellevue Hosp. Ctr.*, No. 09-cv-5692, 2012 WL 5932784, at *6 (E.D.N.Y. Nov. 27, 2012) ("[T]wo instances of somewhat irreverent comments over the

course of a year are simply insufficiently severe or pervasive to create an objectively hostile work environment."). Moreover, the PSAC lacks any allegations that Maines overheard or learned second-hand about the discriminatory comments made to the other plaintiffs.

The other allegations in the PSAC—that Maines was one of the only two African-American employees over 40; that he was paid less than the younger, white male who he replaced; that other supervisors fabricated performance deficiencies, reprimanded him, and denied him access to information needed to complete his job responsibilities—do not support a hostile work environment claim either. *See Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34L, 2014 WL 6473527, at *20 (E.D.N.Y. Nov. 17, 2014) (finding that "conclusory allegations of disparate treatment with respect to the reprimands" fail to allege a racially hostile work environment) (collecting cases).

Therefore, the Court grants the Defendants' motion to dismiss Maines's hostile work environment claims.

### 3. Bailey-Marsh

Bailey-Marsh also fails to state a claim for hostile work environment. The Plaintiffs do not specifically reference the facts which they contend would support this cause of action for Bailey-Marsh. Based on the PSAC, it appears that Bailey-Marsh bases her claims on the allegations that: Parker failed to provide her the raise LCF promised her, and told her she was "lucky to have a job", PSAC ¶¶ 88; and that LCF made her report to an insubordinate (a younger white female) employee with less experience who, in fact, was supposed to be under her supervision, *id.* ¶¶ 83–84, 91–98, 103–105. According to the Plaintiffs, these facially neutral actions "contribute to a

hostile work environment when viewed in context of" of allegations of other incidents of discrimination. ECF 46 at 7.

Looking solely at the incidents that may have impacted Bailey-Marsh, the only overtly discriminatory comment referred to in the PSAC was that white employees criticized Bailey-Marsh as slow. However, "speed is not synonymous with age." *Jones v. Target Corp.*, No. 15-cv-4627, 2018 U.S. Dist. LEXIS 21888, *24 n.21 (E.D.N.Y Feb. 8, 2018). As with the allegations raised by Maines, these comments, while rude, are not of the character normally actionable under anti-discrimination statutes. *See Paul*, 97 F. Supp. 3d at 172. Even assuming that the comments carried discriminatory weight, the PSAC provides no factual information or color regarding how often other employees made these comments. *See Uwakwe v. Bridging Access to Care, Inc.*, No. 15-cv-06703, 2017 WL 1048070, at *9 (E.D.N.Y. Mar. 16, 2017) ("Aside from these bald conclusory allegations, the Complaint does not provide any information concerning the conduct, or the frequency, content, or author of the comments."). The PSAC also lacks any allegations that Bailey-Marsh overheard or learned second-hand about the discriminatory comments made to the other plaintiffs. Therefore, Bailey-Marsh cannot plead a hostile work environment claim simply by combining the comments she heard with the mere fact that she was, in effect, demoted and placed under the authority of a younger white woman. *See Falcon*, 263 F. Supp. 3d at 430 (granting motion to dismiss where plaintiff alleged "she was marginalized by having to submit to Massiah's supposed authority" and "was denied the opportunity to work security detail at a concert").

Therefore, the Court grants the Defendants' motion to dismiss Bailey-Marsh's hostile work environment claims.

### 4. Ganpat

Ganpat states a claim for hostile work environment. According to the PSAC, Ganpat witnessed discriminatory comments and behavior by LCF employees on numerous occasions. Specifically, Ganpat alleges that Parker and Immoor openly discussed that LCF would no longer hire black employees. *Id.* ¶¶ 111, 115. Ganpat witnessed the Defendants actively screen African-American candidates out of their recruiting efforts, including specifically rejecting the applications of potential employees because of their race. *Id.* ¶¶ 112–14. Consistent with these proclamations, Ganpat claims that the Defendants subjected her to criticism, written discipline and unequal application of workplace rules when compared to her white colleagues. *Id.* ¶¶ 117–18. Moreover, Ganpat claims not only that she was emotionally impacted by the Defendants' behavior, but also that she was forced to resign because of this abuse. *Id.* ¶¶ 114, 120.

The Court initially notes that it has doubts about whether can Ganpat can prove a hostile work environment claim solely based on the discriminatory marks contained in the complaint, since they were not directed specifically at her. *See Sletten v. LiquidHub, Inc.*, No. 13-cv1146, 2014 WL 3388866, at *7 (S.D.N.Y. July 11, 2014) ("At least some of these comments are offensive, both subjectively and objectively, but we find that their indirect nature prevents them, standing alone, from being sufficient to constitute the 'severe and pervasive' harassment.").

At the same time, the Court is mindful that discriminatory behavior or comments "need not be directed at a plaintiff in order to contribute to a hostile work environment." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997). The remarks which Ganpat allegedly witnessed are unquestionably offensive. The Court not need stretch its imagination very far to understand how deleterious such comments could be to an African-American employee's perception of the work environment. The gravity of such comments are enhanced here, where the PSAC contains

other allegations of harassing behavior (specifically, disparate treatment from white coworkers). As a result, the Court need not decide whether Parker and Immoor's statements, standing alone, suffice to establish a hostile work environment claim at this point in time.

The cases cited by the Defendants to the contrary, while persuasive, are inapposite because they involve motions for summary judgment. They establish that the indirect nature of the comments may diminish their probative value as evidence in support of a discrimination claim, but do not countenance dismissal of a cause of action at this stage of the litigation, where the Court must accept the allegations in the PSAC as true and draw all inferences in the Plaintiffs' favor. *See Sicular v. N.Y.C. Dep't Of Homeless Servs.*, No. 09-cv-981, 2010 WL 423013, at *20 (S.D.N.Y. Feb. 4, 2010) (finding that the plaintiff "failed to establish a prima facie case of religious discrimination"), *report and recommendation adopted*, 2010 WL 2179962 (S.D.N.Y. May 28, 2010); *Velez v. SES Operating Corp.*, No. 07-cv-10946, 2009 WL 3817461, at *11 (S.D.N.Y. Nov. 12, 2009) (finding that the evidence put forward "failed to raise an inference of discrimination at the *prima facie* stage" because the court could not "attach significant weight" to comments heard indirectly). Ganpat need not establish a *prima facie* case at this point in time, and the Court will not weigh the evidence supporting her claims.

Therefore, the Court is satisfied that Ganpat pleads harassment of "such quality or quantity that a reasonable employee would find the conditions of her [or his] employment altered for the worse,'" *Patane*, 508 F.3d at 113, and grants the Plaintiffs' motion to amend in order to add her hostile work environment claim.

### 5. Alexandre

The Court finds that Alexandre stated claims for hostile work environment based on gender and racial discrimination.

### a. Gender Discrimination

Alexandre's gender discrimination claim is rooted in a number of incidents where a male LCF employee, dubbed "Joe," entered her office and rubbed her back and shoulders without her consent. *Id.* ¶¶ 53–54, 57. According to the PSAC, when Alexandre brought the complaint to Parker's attention, he responded with skepticism and ultimately failed to discipline "Joe," despite promises to the contrary. *Id.* ¶ 58, 62–63. The PSAC also alleges that LCF failed to discipline Joe for other incidents of harassment, as well as for openly viewing pornography in the workplace. *Id.* ¶¶ 59–61.

These allegations resemble those in *E.E.O.C. v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497 (E.D.N.Y. 2014), in which Judge Brodie found that "a rational juror reviewing the totality of the circumstances could find these incidents sufficiently hostile to be actionable" based on allegations that an employee "touched [the complainant's] shoulder two to three times during the relevant period." *Id.* at 517. While she recognized the "the actions complained of by . . . present[ed] a close call," the conclusion that the conditions of the complainant's work environment were altered was bolstered by allegations of sexual harassment to other women in the office. *Id.*

Similarly, the PSAC claims not only that a male employee inappropriately touched Alexandre without her consent on multiple occasions, but also that he harassed other women and openly viewed pornography in the office place. Moreover, LCF failed to discipline Joe for this behavior, despite multiple complaints from female employees. These allegations, viewed in their totality, adequately allege a hostile work environment claim. *See Messer v. Fahnestock & Co.*, No. 03-cv-4989, 2008 WL 4934608, at *15 (E.D.N.Y. Nov. 18, 2008) (denying summary judgment on sexual harassment claim where plaintiff alleged that her harasser "massaged her shoulders without permission, told her on one occasion that she 'loo[ked] very sexy'" and commented on her

appearance and personal life despite indications from plaintiff that his comments and attention were unwelcomed); *Stathatos v. Gala Resources, LLC*, No. 06-cv-13138, 2010 WL 2024967, at *5–6 (S.D.N.Y. May 21, 2010) (summary judgment denied where plaintiffs claimed that harasser touched their shoulders and arms, and were exposed to sexually explicit conversations and photographs, and to sexist jokes). The cases cited by the Defendants to the contrary do not persuade the Court otherwise, because they involved motions for summary judgment. *See Mendez-Nouel v. Gucci Am., Inc.*, No. 10-cv-3388, 2012 WL 5451189, at *11 (S.D.N.Y. Nov. 8, 2012) (reaching conclusion "[o]n review of the record as a whole"); *Pena-Barrero v. City of New York*, No. 14-cv-9550, 2017 WL 1194477, at *17 (S.D.N.Y. Mar. 30, 2017) (explaining that plaintiff "has not put forward evidence that would . . . create a genuine dispute of material fact").

Therefore, the Court grants the Plaintiffs' motion to amend in order to add Alexandre's gender-based hostile work environment claim.

### b.  Racial Discrimination

Regarding her claims of racial discrimination, Alexandre alleges that Parker and other LCF employees made a variety of racially-charged comments including, but not limited to, negative comments about the smell of the Haitian food that Alexandre brought to the office for lunch, PSAC ¶¶ 67–68; derisive remarks about the Martin Luther King Jr. holiday, *id.* ¶¶ 69–70; and stereotypical accusations about African-American employees, *id.* ¶ 71. According to the PSAC, Alexandre also experienced issues with workplace compensation which no white employees suffered. *Id.* ¶¶ 72–75.

Each of these claims, standing alone, do not rise to the level of a hostile work environment claim. However, as with the claims raised by Ganpat, the Court believes that, viewed as a whole, a reasonable employee would find the conditions of her employment altered based on these

29

allegations. *See Smith v. Reg'l Plan Ass'n, Inc.*, No. 10-cv-5857, 2011 WL 4801522, at *4–5 (S.D.N.Y. Oct. 7, 2011) (employers made inappropriate racial remarks including comments on the smell of the plaintiffs' food and other stereotypical accusations); *Zhao*, 472 F. Supp. at 313 (employers made inappropriate racial remarks in addition to facially neutral incidents supporting an inference of discrimination); *Edwards v. Town of Huntington*, No. 05-cv-339, 2007 WL 2027913, at *5 (E.D.N.Y. July 11, 2007) (employer made inappropriate racial remarks, including stereotypical comments and disparaging comments about the Martin Luther King Holiday, Jr.).

The Court is not persuaded by *Thelwell v. City of New York*, No. 13-CV-1260, 2015 WL 4545881 (S.D.N.Y. July 28, 2015), because it involved a motion for summary judgment. *Id.* at *11. After discovery, and after the taking of the plaintiff's deposition, the court in *Thelwell* found that "a jury could not find that [the relevant employee's] actions unreasonably interfered with the plaintiff's work performance." *Id.*

Therefore, the Court grants the Plaintiffs' motion to amend in order to add Alexandre's race-based hostile work environment claim.

## G. AS TO THE WRONGFUL TERMINATION CLAIMS ON THE BASIS OF RACE (COUNTS II, V, VIII, AND XI)

The analytical frameworks for adjudicating wrongful termination claims under Title VII, Section 1981, and the NYSHRL are identical. *See Weaver v. Warrington*, No. 14-cv-7097, 2015 WL 4645298, at *2 (E.D.N.Y. Aug. 4, 2015) ("Claims under Title VII, 42 U.S.C. § 1981, and the NYSHRL are all analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Retaliation and discrimination-based wrongful termination claims are also subjected to the *McDonnell* analysis.").

"To establish a prima facie claim of wrongful termination, a plaintiff must demonstrate that: (1) she [or he] is a member of a protected class; (2) she [or he] was qualified for the position; (3) she [or he] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018) (Spatt, J.) (citing *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *Viola v. Philips Med. Sys.*, 42 F.3d 712, 716 (2d Cir. 1994)).

This is analyzed under the *McDonnell Douglas Corp.* burden-shifting framework. 411 U.S. at 792, 93 S.Ct. 1817. To do so, first the Plaintiff must establish a prima facie case of discrimination. If she or he does, the burden shifts to the Defendants to articulate a legitimate, non-discriminatory reason for their actions. Then, the burden shifts back to the Plaintiff to prove that discrimination was the true reason behind the Defendants actions. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

"However, the survival of a complaint under Rule 12(b)(6) scrutiny in an employment discrimination case 'does not rest on whether it contains specific facts establishing a prima facie case under *McDonnell Douglas*.'" *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (Spatt, J.) (quoting *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F.Supp.2d 228, 236 (E.D.N.Y. 2011)); *Fanelli v. New York*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014) (Spatt, J.); *Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 251 (E.D.N.Y. 2013) (Spatt, J.). "This is because, at the pleading stage, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for the discrimination claims." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231; *Friel*, 947 F. Supp. 2d at 251; *see also Gonzalez v. Carestream Health, Inc.*, 520 Fed.Appx. 8, 9–10 (2d Cir. 2013) ("To survive a motion to dismiss, a complaint alleging workplace

discrimination . . . need not allege specific facts establishing a prima facie case of discrimination under *McDonnell Douglas* . . . .").

Rather, "[this Court] consider[s] only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Gonzalez*, 520 Fed.Appx. at 10 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "In other words, the Court asks only whether a plaintiff has pled a *prima facie* case, not whether a plaintiff has established that case. Thus, the standard is simply whether the plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim of discrimination." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231; *Friel*, 947 F. Supp. 2d at 251; *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("Plaintiffs need only comply with Rule 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest."). In the causation context, this means the Plaintiffs need only allege a set of facts that it makes it "plausible" that a protected characteristic was a "motivating factor" in the decision to terminate their employment. *Fanelli*, 51 F. Supp. at 232.

The Defendants claim that the PSAC does not allege such facts. In a vacuum, this argument makes sense. Each of the comments pointed to by the defendants (such as those about the smell of Haitian food or whether banks closed on Martin Luther King Jr. Day) do not directly support the inference that Maines, Bailey-Marsh or Ganpat's race played a role in the decision underlying their terminations.

However, the Defendants ignore the gravamen of the allegations supporting the Plaintiffs' race-based wrongful termination claims—Parker and Immoor proclaimed that they would no longer hire black employees, and, consistent with this proclamation, began screening African

American candidates out of their employment searches and specifically rejected potential employees because of their race. *Id.* ¶¶ 111–115. The other racially-charged remarks the Defendants take issue with must be viewed in the context of these statements. In the Court's view, they certainly give rise to a plausible inference of discriminatory intent. *See Love*, 186 F. Supp. 3d at 252 (finding inference of discrimination existed when allegations included statements that "overtly and impliedly suggested that the supervisors of the Hauppauge location did not want African Americans joining the company's Long Island contingency"); *Stephens v. Hofstra Univ. Sch. of Law*, No. 01-cv-5388, 2005 WL 1505601, at *6 (E.D.N.Y. June 24, 2005) ("A plaintiff may generally offer events or actions subsequent to his termination as evidence of discrimination at an earlier point in time.")

Therefore, Maines, Bailey-Marsh, and Ganpat state a claim for wrongful termination on the basis of race.

## H. AS TO THE WRONGFUL TERMINATION CLAIMS ON THE BASIS OF AGE (COUNTS VIII AND XI)

Unlike wrongful termination claims on the basis of race, which only require allegations that race be a "motivating factor," "the Supreme Court has held that a plaintiff alleging age discrimination under the Age Discrimination in Employment Act must allege 'that age was the 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)); *see also Arnold v. Research Found. for State Univ. of New York*, 216 F. Supp. 3d 275, 287 (E.D.N.Y. 2016) (Spatt, J.) ("The elements of an age discrimination claim under the New York State Human Rights Law and the ADEA are essentially the same and courts apply the same standards for analyzing age discrimination claims under both statutes.");

*Powell v. Delta Airlines*, 145 F. Supp. 3d 189 (E.D.N.Y. 2015) (applying the "but for" cause standard to an NYSHRL age discrimination claim).

The PSAC lacks any allegations that age was the "but for" cause of Maines and Bailey-Marsh's termination. The only support provided is that they were replaced by younger employees. However, this allegation, without more, cannot establish "but for" causation. *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 465–66 (S.D.N.Y. 2010) ("The claim merely alleges that plaintiffs are over 40 years of age and were replaced by younger teachers. That merely repeats the statutory elements, without setting out any facts from which age discrimination can be inferred.") (collecting cases); *Nance v. City of New York*, No. 09-cv-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) ("[A]n allegation that plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss."); *Barone v. S & N Auerbach Mgmt., Inc.*, No. 12-cv-6101, 2014 WL 6977811, at *4 (E.D.N.Y. Dec. 8, 2014) ("The sole allegation upon which plaintiff bases his claim of age discrimination is that defendant subsequently 'hired a thirty (30) year old male to perform most, if not all of [his] job duties, at a substantially reduced salary.' That allegation, alone, is insufficient to support an inference of age discrimination."); *Zucker v. Five Towns Coll.*, No. 09-cv-4884, 2010 WL 3310698, at *2 (E.D.N.Y. Aug. 18, 2010) ("[T]he Court finds that allegations concerning Mr. Zucker's satisfactory work performance, termination, and much younger replacement do not—by themselves—suffice to plead an age discrimination claim.").

The Plaintiffs seem to imply, but do not explicitly argue, that the allegedly derogatory remarks about Maines and Bailey-Marsh's age satisfy the causation requirement for their wrongful termination claims. However, the Plaintiffs do not allege that these isolated comments were related to the decision to terminate them in any way. *See Morris*, 2012 WL 5932784, at *6 ("The only

allegation to support his claim of age discrimination . . . is that at some point after July of 2007, his supervisor, Gonzalez, and a co-worker, Sullivan, began to call him 'Old Man' and tell him that he moves too slowly. This too is insufficient to state a claim for either discrimination based on age.")

Therefore, the Court grants the Defendants' motion to dismiss with respect to the age-based wrongful termination claims.

## I. RETALIATION (COUNTS III, VI, IX, AND XII)

The Court applies the same rubric to retaliation causes of action under Title VII, Section 1981, the ADEA, and the NYSHRL. *See Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 317 (E.D.N.Y. 2014) (Spatt, J.) ("[R]etaliation claims brought under the NYSHRL [and] § 1981 . . . are subject to the same analysis as Title VII claims."); *McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 411 n.3 (E.D.N.Y. 2009) ("The same standards apply to both ADEA and Title VII cases." (citing *Terry*, 336 F.3d at 141).

The order and allocation of burdens of proof in retaliation cases follow that of the general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817. In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) he was engaged in a protected activity under Title VII; (2) the defendant was aware of the plaintiff's participation in the protected activity; (3) the employer took an adverse action against the plaintiff based upon his activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 608 (2d Cir. 2006); *Terry*, 336 F.3d at 141. However, "the allegations in the complaint need only give plausible support to the reduced prima facie

requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 316.

The Defendants' only objection to Maines's retaliation claim is that he fails to allege that he engaged in a protected activity. The PSAC alleges that "Maines . . . complained via email to Mr. Parker, Ms. Van Wie, and Ms. Immoor that LCF had harassed him and created a hostile work environment based on his age and race," PSAC ¶ 47, and that he "wanted to address the issues of discrimination that he had raised," *id.* ¶ 50. According to the Defendants, who attach the e-mail referred to in the PSAC, Maines did not, in fact, tie his complaints to race or age discrimination. The Court agrees with the Defendants, and finds that Maines fails to state a cause of action for retaliation.

"Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Amaya*, 295 F. Supp. at 216; *see also Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (noting that the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). The Court will evaluate the extrinsic evidence presented by the Defendants, because the e-mails provided are integral to the complaint. Maines had "(1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (Spatt, J.) (quoting *DeLuca v. AccessIT Group, Inc.*, 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010)).

On the day of his termination, after Van Wie informed Maines via e-mail that LCF would change his job duties because of concerns regarding his work performance, Maines e-replied: "I'll confer with my NY Att[o]rney. You all have harassed me. I was hired to report to Andy only and

not to you and Lauren. You all have created a hostile working environment for me and others." ECF 43, Ex. C. Parker responded asking the basis of his accusation and whether to interpret his e-mail as his resignation. ECF 43, Ex. D. In response, Maines said: "I'll confer with my NY Attorney. You all have harassed me. I was hired to report to you only and not to Lauren & Kristen. I can prove this if needed. Again, you all have created a hostile working environment for me and others. The disrespect was unbelievable from Kristen Lauren and you. I sent you an email to tell you about a family emergency of my Wife's Sister died. The disrespect from emails with you and Mitch were awful." ECF 43, Ex. E.

The complaints raised in these e-mails do not "establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). "A complaint is not protected simply because it alleges discrimination or the Plaintiff has a good faith belief that [he] is being discriminated against." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, No. 11-cv-5035, 2012 WL 3241402, at *13 (E.D.N.Y. Aug. 3, 2012) (Spatt, J.). Rather, the Court "must look at the substance of [his] complaint, not the terminology that [he] used," and determine whether he believed he was protesting "statutorily prohibited discrimination." *Id.* at *12–13. Put another way, Maines's e-mails to Parker only creates a cause of action for retaliation if they contained complaints of harassment tied to his race or age. *Gourdine v. Cabrini Med. Ctr.*, 307 F.Supp.2d 587, 598 (S.D.N.Y.2004). "Otherwise, any employee who is disgruntled or dissatisfied with any aspect of his or her employment would ultimately find relief . . . even when race or [age] was not an issue." *Id.*

After reviewing the e-mails, it is clear that Maines only told parker that he was "harassed" broadly, and failed to tie his complaints to statutorily prohibited characteristics. Although Maines

mentioned the existence of a "hostile work environment," the utterance of this phrase, on its own, does not satisfy the protected activity prong. *See Kelly*, 2012 WL 3241402, at *12 ("The fact that the Plaintiff alleges that she used the words discrimination and harassment in her complaints is not enough to state a claim for retaliation."). While Maines may have reasonably believed that he was opposing harassment by the Defendants, he fails to sufficiently allege that he had a good faith, reasonable belief that this conduct was based on his race or age. *See id.* at 14 ("While the Plaintiff may have 'reasonably believed' that she was opposing the Defendants' preferential treatment of Joyce, and discrimination and harassment resulting from the relationship, the Plaintiff fails to sufficiently allege that she had a good faith, reasonable belief that this conduct was based on her gender.") *Harrison v. SUNY Downstate Med. Ctr.*, No. 16-cv-1101, 2017 WL 4326507, at *7 (E.D.N.Y. Sept. 25, 2017) ("While Harrison alleges that Parker's 'hostile and threatening behavior was directed at [her] as a result of her gender,' nowhere does she allege that she informed anyone at SUNY prior to her termination that she suspected that Parker's hostility was gender-related.").

Furthermore, the Court finds that even if his e-mails constituted "protected activity," Maines's retaliation claim fails under the second element. "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Nothing in the e-mails Maines sent Parker would have allowed the Defendants to reasonably have understood his opposition was directed at conduct prohibited by the discrimination statutes he sued under. Beyond failing to list his race or age as a cause of the harassment he complained of, Maines ignored Parker's explicit request for clarifying information about the nature of his claims. ECF 43, Ex. D. In fact, the object of Maines's ire appears to be the Defendants' lack of sympathy to a

"family emergency" and not discrimination on the basis of a protected characteristic. ECF 43, Ex. E.

These facts fail to establish that the Defendants were aware of the protected activity. *See Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (plaintiff's complaints "neither pointed out discrimination against particular individuals nor discriminatory practices"); *Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 724 F.Supp.2d 382, 395 (W.D.N.Y. 2010) (dismissing retaliation claim when the plaintiff's allegations show "that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex"); *Krasner v. HSH Nordbank AG*, 680 F.Supp.2d 502, 521 (S.D.N.Y 2010) (dismissing retaliation claim where the plaintiff "admitted that all of his pre-termination complaints . . . addressed only his supervisor's affair with a female employee, which he characterized as a violation of the employer's ethics policy, and the detrimental effects of this relationship on the plaintiff and on the department" in which he worked); *Harrison*, 2017 WL 4326507, at *7 ("[N]othing in her behavior, as described in her complaint, would have allowed her employer to reasonably have understood that Harrison's opposition was directed at conduct prohibited by Title VII."); *Kelly*, 2012 WL 3241402, at *15 ("Accordingly, the Plaintiff's complaints to Lawrence and Jay did not state that she viewed Lawrence's actions as based on gender, and there was nothing in her protests that could reasonably have led the Defendants to understand that was the nature of her objections"); *Inganamorte v. Cablevision Sys. Corp.*, No. 03-cv-5973, 2006 WL 2711604 at * 16 (E.D.N.Y. Sept. 21, 2006) (holding that the employer could not have been aware plaintiff's complaint concerned gender discrimination because the complaint failed to "state or imply that gender had anything to do with her objections" and her complaint indicated that men also received similar unfair treatment).

Therefore, the Court grants the Defendants' motion to dismiss Maines's retaliation claims.

### III. CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss, in part, and denies the motion to dismiss, in part. Accordingly, the Court grants the motion to amend, in part, and denies the motion to amend, in part. The Plaintiffs are directed to file a third amended complaint consistent with this decision.

It is **SO ORDERED**:

Dated:  Central Islip, New York

September 21, 2018

___/s/Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge